IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMY MARCHEL,

                                        OPINION AND ORDER

                Plaintiff,

                                            15-cv-252-bbc

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Amy Marchel is seeking review of a final decision denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that she has been disabled since 1991 because of numerous impairments, including depression, anxiety, bipolar disorder and a learning disability. The administrative law judge concluded that even though plaintiff has several severe and non-severe impairments, she is not disabled because she can perform medium exertional work with limitations. As explained below, I agree with plaintiff that the administrative law judge did not give an adequate explanation for discounting the opinion of plaintiff's treating psychiatrist and failed to conduct a proper credibility analysis. However, I must deny plaintiff's request to award benefits outright. Although I am loathe to extend this litigation further, there are factual issues that must be addressed by an the Social Security Administration. Therefore, I am remanding this case for further proceedings. Allord v. Astrue, 631 F.3d 411, 418 (7th

1

Cir. 2011) (social security case must be remanded for further proceedings if factual issues remain unresolved).

The following facts are drawn from the administrative record (AR) and supplemental administrative record (Suppl. AR).

FACTS

A. Social Security Applications and Background

Plaintiff Amy Marchel was born on March 7, 1973. She first filed for disability insurance and supplemental security benefits in November 2005, contending that she had been disabled since March 1, 1991 because of depression, anxiety, post-traumatic stress disorder and a learning disability. AR 770. Her application was denied initially and on reconsideration in 2006, and she requested a hearing before an administrative law judge. A hearing was held on February 10, 2009, with an unfavorable decision issued on May 5, 2009. AR 770. Plaintiff appealed to the Appeals Council in March 2010, which denied review in December 2010. She then filed suit in this court in January 2011.

Meanwhile, plaintiff filed a second application, in June 2009, alleging disability as a result of depression, anxiety, bipolar disorder and a learning disability. That application was denied upon initial review in September 2009 and upon reconsideration in February 2010. A hearing on plaintiff's second application was held in May 2011 and a second unfavorable decision was issued the following month. AR 14-27. Plaintiff appealed that decision to the Appeals Council in July 2011 and the Appeals Council again denied review. AR 1. Plaintiff

filed a lawsuit in this court in 2012 challenging the decision with respect to her second application.

Plaintiff later filed a third application for disability benefits, alleging disability as a result of depression, anxiety, bipolar disorder, a learning disability and asthma. The third application was denied upon initial review in April 2012 and upon reconsideration in May 2013.

In November 2012 and February 2013, I reversed the administration's decisions denying benefits and remanded plaintiff's claims to the commissioner for further administrative proceedings. AR 632-40. In August 2013, the Appeals Council directed the administrative law judge to consolidate all of plaintiff's claim files, make one record and issue a new decision on the consolidated claims, based on the applications filed on November 29, 2005. AR 648.

On January 12, 2015, a hearing was held before Administrative Law Judge Thomas Springer in Wausau, Wisconsin, at which plaintiff was present and represented by counsel. AR 580-628. On February 24, 2015, the administrative law judge concluded that plaintiff was not disabled. AR 767-788. The Appeals Council denied plaintiff's request for review, making the hearing decision the final decision of the commissioner.

B. Overview of Medical Problems and Treatment

Plaintiff has a history of depression, with treatment records dating back to 2001. In December 2004, she was hospitalized for three days for depression and suicidal thoughts.

Suppl. AR 267. Her diagnosis was "major depression, recurrent moderate to severe" and "posttraumatic stress disorder chronic with continued symptoms." Suppl. AR 267. She was hospitalized again between May 2 and May 5, 2006 for major depression and generalized anxiety disorder with panic attacks. Suppl. AR at 307. From 2005 through 2008, she received mental health services through Portage County Health and Human Services, Suppl. AR at 364-370, 304, 382-95, 402-22, as well as therapy sessions at Children's Service Society of Wisconsin during this time. Suppl. AR at 297-303, 518-21. From February 2007 to November 2008, plaintiff had more than 30 visits to a doctor or to other care providers at Portage County. AR 477-522, 461-465. At various appointments, she was given a diagnosis of bipolar disorder, depression and generalized anxiety disorder. Suppl. AR at 473; AR 1122.

Plaintiff had an eight-session psychological evaluation in 2006, ordered by the court as a condition for returning her children to her care. Suppl. AR 453-55. The evaluator found that plaintiff met the criteria for major depressive disorder and borderline personality disorder. Suppl. AR at 455. On the Wechsler Adult Intelligence Scale-3, she had a verbal IQ of 70, a performance IQ of 100 and a full IQ of 91. Suppl. AR at 454. The evaluator found her skill level in all three areas well below average and her skills significantly deficient. Id. The Minnesota Multiphase Personality Inventory-2 profile showed that plaintiff was experiencing a significant level of depression and anger, difficulty with trust, feelings of insecurity and at high risk for abusing alcohol or drugs. Id. However, the evaluator also stated that plaintiff's profile showed an "unusual number of psychological symptoms" and

might be "invalid," either because of plaintiff's poor reading ability, confusion, disorientation, stress, exaggeration or malingering. Suppl. AR 425.

In August 25, 2008, plaintiff saw Barbara Schira, APN-P, BC at Portage County Health and Human Services. AR 466-67. Plaintiff told Schira that she was feeling overwhelmed by the amount of hours she was working at Goodwill Industries and that she wanted to work only 20 hours because she had family and other obligations and because she was concerned that she would end up back in the hospital if she worked more. Schira found plaintiff in a good mood but "overwhelmed with working too much and anxious." Id. She restricted plaintiff to 20 hours of work a week. Id. Plaintiff continued receiving treatment for depression and mental health problems throughout 2009, 2010, 2011 and 2012, with periodic appointments to check and adjust her medications. At some appointments, plaintiff reported doing well, while at others, she reported having racing thoughts and feeling depressed and suicidal. AR 564-57, 1356, 1515-30.

In 2012, plaintiff saw Dr. Maureen Leahy, a psychiatrist with Portage County, for several appointments. In early 2012, plaintiff reported feeling depressed, having racing thoughts and trouble sleeping and managing her medication. AR 1516-18. In April 2012, Dr. Leahy noted that plaintiff could not afford her medications. AR 1522. Leahy made several adjustments to plaintiff's medications throughout 2012. In April 2012, Leahy called plaintiff's employer to state that plaintiff could not work more than 15 hour a week. Id. In May 2012, Leahy noted that plaintiff was "finally stabilizing after a prolonged hypomanic episode," with sleep, appetite and energy all within normal limits. AR 1524. However, in

5

June 2012, plaintiff was again having racing thoughts and difficulty sleeping. AR 1525. Her troubles continued into July 2012, when she reported going days without sleeping at all. AR 1526. In October and November 2012, plaintiff had appointments with Dr. Leahy at which she reported having racing thoughts, trouble sleeping, panic attacks, difficulty concentrating and trouble with her medication. AR 1529-30.

In November 2012, plaintiff was hospitalized for several days after threatening to stab herself with a knife. AR 1370. After she was released, she felt better, but still had racing thoughts and depression. AR 1402. Later in November 2012, Dr. Leahy noted that plaintiff was experiencing fluctuating moods, from severe depression to agitation, racing thoughts and hypomania. AR 1531. Leahy also noted that plaintiff could not afford a sleep medication that had been helping her, and that plaintiff "continue[d] to minimize her symptoms." Id. Plaintiff reported feeling better during an appointment in December 2012, but shortly thereafter was struggling again with racing thoughts and concentration. AR 1533-38. Dr. Leahy recommended that plaintiff try lithium, but plaintiff was afraid to do so. AR 1538.

Between January and April 2013, plaintiff had trouble with racing thoughts and anxiety, despite being on two antipsychotic medications and a mood stabilizer. AR 1541-42. Her mood improved in late 2013, and she remained stable throughout much of 2014. However, in August 2014, plaintiff was again admitted to the hospital because of suicidal thoughts, reporting that she had been depressed and contemplating suicide for the last couple of months. AR 737-40. She was released several days later, at which time she reported feeling much better. AR 744-45.

### C. Dr. Leahy's Opinion

Plaintiff's primary care provider, Dr. Maureen Leahy, provided a medical report, dated April 24, 2014. AR 1503-1512. Dr. Leahy stated that plaintiff met Listing 12.04 "affective disorders," noting a diagnosis of bipolar disorder, repeated bouts of depression and mania despite treatment with multiple psychiatric medications. AR 1505. Dr. Leahy conducted 34 personal examinations of plaintiff between October 2006 and April 2014. AR 1506. Under "prognosis," Dr. Leahy wrote that plaintiff "will continue to have periods of severe decompensation mixed with episodes of better functioning. Lacks persistence of pace." Id. She also wrote that plaintiff "has been able to work a few hours a week (<15) when doing well, but is unable to maintain persistence and pace of any work consistently." Id. Dr. Leahy found that plaintiff would be off-task 30% of the day, would miss 5 days or more a month and would be unable to complete an 8-hour workday 5 days or more a month because of her mental limitations and need for periodic medical treatment. AR 1508-09. She stated that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence or pace and four or more episodes of decompensation within a 12-month period. Finally, Dr. Leahy noted that plaintiff had "tried employment on multiple occasions since 2006, but was only able to work jobs less than part-time and then needs to quit because of exacerbation of her illness. Unable to work even part-time consistently." AR 1511.

D. <u>Administrative Hearing</u>

At the January 2015 hearing, plaintiff testified that she was working two jobs as a home health aide, both of which required her to work independently without a supervisor. She had worked for GT Independence for four years, and worked about 20-30 hours every two weeks. AR 589. For Consumer Direct, she worked about three hours a week taking people shopping. AR 590. Plaintiff testified that she needed to work fewer hours because her depression was getting worse and she had been calling in sick three or four times a week for the last couple of months. Id.

Plaintiff testified that she had panic attacks once or twice a week, and had spent most of her days in bed for the last three years. AR 602-03. She said that she is unable to get out of bed at all approximately three times a month. AR 606. At the time of the hearing, plaintiff was seeing Dr. Leahy once a month, though sometimes she needed to see her weekly. AR 600. With respect to her medication, plaintiff said it sometimes worked well, particularly when she first takes it. AR 601. Plaintiff also explained that she had been assigned a Portage County social worker who checked on her, made sure she picked up her medication every two weeks and helped her with forms and FoodShare. AR 609.

In addition to plaintiff, a vocational expert testified, responding to several hypotheticals from the administrative law judge. The administrative law judge's initial hypothetical person was:

> limited to routine tasks involving a reasoning development level of no more than 3 on the [Dictionary of Occupational Title's] GED scale that allows for being off-task at the assigned workstation up to 10 percent of the workday in addition to regular breaks; does not involve fast paced or production rate tasks; has few, if any,

workplace changes; requires no more than occasional tandem tasking or interaction with supervisors, the public and co-workers; and would allow for on unscheduled absence or arrival for work after the scheduled starting time or an early departure from work every other month due to impairment-related symptoms.

AR 618. In subsequent questions, the administrative law judge added a limitation for medium exertional work and limited reasoning development level of 2 on the Dictionary of Occupational Title's GED scale. AR 620. The vocational expert testified that such an individual could still perform plaintiffs's past work as well as the jobs of busser, kitchen helper and order filler. AR 621.

E. Administrative Law Judge's Decision

The administrative law judge found that plaintiff had not engaged in substantial gainful activity since March 1, 1991, the alleged onset date of her disability. AR 773. The administrative law judge then found that plaintiff's affective disorder, anxiety disorder and borderline intellectual functioning were all severe impairments, but that none of the impairments, alone or in combination, met or medically equaled the severity of a listed impairment. AR 773-74.

The administrative law judge found that plaintiff had only "mild limitations" in her activities of daily living, citing her consistent part-time work, ability to care for pets, make meals for her family, do the dishes and other household chores such as laundry or vacuuming and tend to personal hygiene, unless in a deep depression. AR 774. The administrative law judge noted that plaintiff shops for groceries, takes public transportation, watches television, plays on the computer, rides a bike, makes scrapbooks, listens to music, reads and works on

9

"self-care." He also noted that plaintiff did not want to work more than 20 hours a week because of family and other obligations. Id.

Next, the administrative law judge found that plaintiff had "moderate difficulties" in social functioning, noting that she works part-time as a home health aide, goes grocery shopping, has friends, takes public transportation and enjoys spending time with family and friends and helping people, unless she was going through a "bout of depression." Id.

With respect to concentration, persistence or pace, the administrative law judge found that plaintiff had "no more than moderate difficulties." Id. He cited her 2006 psychological testing and suggested that the results of the personality test showed a "lack of cooperation with the testing or malingering by attempting to present a false claim of mental illness." Id. He noted that plaintiff had graduated from high school and obtained her certification as a nurse's aide and that her "mental status exams are generally normal and typically show intact memory with unremarkable thought processes and fairly good ability to concentrate and attend." AR 775.

In his residual functional capacity assessment, the administrative law judge limited plaintiff to less than the full range of medium work, as follows:

> She can lift and carry 50 pounds occasionally and 25 pounds frequently and can stand, walk and sit about 6 hours respectively. She is limited to routine tasks involving a reasoning development level of no more than 2 on the DOT's GED scale and that allow for being off task at the assigned work station up to 10% of the work day in addition to regular breaks. She is precluded from fast paced or production rate tasks. She is limited to few, if any, work places changes and requires no more than occasional tandem tasking or interaction with supervisors, the public and co-workers. She is limited to work that would allow for one unscheduled absence or arrival for work after the scheduled starting time or early departure from work every other month due to impairment-related symptoms.

10

AR 775-76.

The administrative law judge discussed plaintiff's long history of treatment for her mental health problems as well as plaintiff's own testimony regarding her symptoms and activities. The administrative law judge acknowledged that plaintiff reported having panic attacks at least one to two times a week, difficulty sleeping, difficulty getting out of bed and missing work often because of depression and anxiety. AR 776. However, the administrative law judge found that plaintiff's testimony was "only partially credible." AR 782. He found it significant that plaintiff had worked part-time, cared for her pets, cooked for her family and performed household chores, among other activities. He also noted that the "record reveals some problems with treatment compliance . . . which suggests her symptoms may not have been as serious as has been alleged." Id. He stated that "with consistent medication compliance, the claimant's overall condition stabilizes and her bipolar depression goes into partial or even full remission." Id.

The administrative law judge gave no weight to the opinion of plaintiff's treating physician, Dr. Leahy, on the ground that her conclusions "are completely inconsistent with the majority of Dr. Leahy's treatment notes but most significantly, the treatment notes from the most recent appointment." AR 785. Specifically, in January 2014, plaintiff was doing "very well." The administrative law judge noted that "much of Dr. Leahy's treatment notes specify the claimant was doing very well and her condition was stable." Id. He also found that Dr. Leahy's opinion that plaintiff had marked limitations in her activities of daily living contradicted plaintiff's own reported activities about her part-time work, household chores,

hobbies and other activities. The administrative law judge dismissed Dr. Leahy's opinion that plaintiff had experienced three or more episodes of decompensation within 12 months, noting that Dr. Leahy she had failed to offer any examples of these episodes. AR 786.

Finally, the administrative law judge concluded from the vocational expert's testimony that plaintiff was not disabled because work exists in significant numbers in the national economy that plaintiff could perform. AR 786.

OPINION

Plaintiff contends that the administrative law judge erred by (1) improperly discounting the opinion of plaintiff's treating psychiatrist; (2) failing to conduct a proper credibility analysis; and (3) asking the vocational expert a hypothetical question that failed to adequately encapsulate plaintiff's limitations in concentration, persistence and pace.

A. Treating Psychiatrist's Opinion

Plaintiff challenges the administrative law judge's decision to give no weight to Dr. Maureen Leahy's opinions provided in the April 24, 2014 medical report. The opinions of treating physicians such as Dr. Leahy are entitled to controlling weight if they are supported by objective medical evidence and are consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c) (rule governing claims filed before March 27, 2017); Brown v. Colvin, 845 F.3d 247, 252 (7th Cir. 2016); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). In this instance, the administrative law judge declined to give Dr. Leahy's opinions

controlling weight because they were "completely inconsistent with the majority of Dr. Leahy's treatment notes but most significantly, the treatment notes from the most recent appointment," at which plaintiff was doing "very well." AR 785. The administrative law judge also found that Dr. Leahy's opinions about plaintiff's limitations contradicted plaintiff's own reported activities about her part-time work, household chores, hobbies and other activities. AR 786.

Plaintiff argues that the administrative law judge "played doctor" by interpreting Dr. Leahy's own notes about plaintiff's mood and affect during appointments, and disregarding Dr. Leahy's lengthy relationship with plaintiff, plaintiff's diagnoses of depression, anxiety and bipolar disorder, the numerous times in which Dr. Leahy adjusted plaintiff's medications and the fact that plaintiff's condition varied between adequate functioning to suicidal ideation and hospitalization. Plaintiff also contends also that the administrative law judge failed to consider the requisite factors for evaluating medical source opinions set forth in the applicable regulation.

I agree with plaintiff that the administrative law judge improperly focused on select portions of Dr. Leahy's treatment notes and failed to provide an adequate analysis of her opinions about plaintiff's limitations. In particular, the administrative law judge focused on portions of treatment notes in which Dr. Leahy wrote that plaintiff was doing "well" with her medications or was able to have a logical and appropriate conversation. AR 785. However, the administrative law judge did not discuss the numerous treatment notes in which Dr. Leahy found that plaintiff was struggling, was "minimiz[ing] her symptoms," AR

13

1531, or was overwhelmed by working. AR 1522. The administrative law judge also failed to acknowledge that Dr. Leahy's observations included descriptions of how plaintiff presented on the day of her appointment; they were necessarily general assessments of plaintiff's mental health. Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) ("[T]he affect and mood notes that the ALJ emphasized simply described how Gerstner presented *on the days of her appointments*. They were not general assessments.") (emphasis in original). As the records show, plaintiff's mental health fluctuated: she presented well at some appointments with Dr. Leahy, but her condition could deteriorate within a matter of days or weeks. Dr. Leahy explained this in her medical report to the agency, stating that plaintiff "will continue to have periods of severe decompensation mixed with episodes of better functioning." AR 1506.

The administrative law judge also found that plaintiff's condition was generally stable when she complied with her medications, AR 786, but he failed to discuss the numerous notes in which Dr. Leahy continued to assess plaintiff as having an anxiety and bipolar disorder and the fact that Leahy made several adjustments to plaintiff's medications over the years in order to control her symptoms and the side-effects of the medications. Gerstner, 879 F.3d at 262 (administrative law judge erred by failing to acknowledge that "every treatment note after August 2012 repeats [the same] diagnoses and treatments; he even changed the medication for [plaintiff's] bipolar disorder in January 2013 and increased the dosage three months later. These unchanged diagnoses and the medication adjustments belie the conclusion that [plaintiff's] mental health had improved").

Similarly, the administrative law judge found it significant that plaintiff was doing well in January 2014, but he failed to acknowledge that by August 2014, plaintiff had deteriorated to the point that she again required hospitalization for suicidal ideation.

Finally, after declining to give Dr. Leahy's opinion controlling weight, the administrative law judge did not apply the factors enumerated in 20 C.F.R. § 404.1527(c), including "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing administrative law judge for saying "nothing regarding this required checklist of factors"). See also Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008) (stating that when treating physician's opinion is not given controlling weight, "the checklist comes into play").

The commissioner's primary argument in response is that the administrative law judge properly discounted Dr. Leahy's opinion because there was no significant "medical evidence" in the record to support it. The commissioner argues that Dr. Leahy's opinion was based on her diagnoses of mental impairment and plaintiff's own complaints of cycling moods, insomnia or racing thoughts, neither of which are actually "medical evidence." However, the Court of Appeals for the Seventh Circuit has rejected this argument, explaining that "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist" and should not be excluded on that basis." Price v. Colvin, 794 F.3d 836, 840 (7th Cir. 2015). See also Thompson v. Berryhill, 722 F. Appx 573, 581 (7th Cir. 2018) ("Like a medical doctor evaluating physical pain, a psychologist must start with the patient's

15

description of her own experience; this is not a defect. Subjective complaints are nevertheless assessed according to the profession's objective criteria; what the psychologist puts out is not a simple transcription of the patient's self-report.") Here, Dr. Leahy treated plaintiff with numerous medications for approximately 10 years and saw her for 34 in-person visits. It is an error to conclude that Dr. Leahy's evaluations of plaintiff are not medical evidence. Because of these errors, I conclude that substantial evidence does not support the administrative law judge's decision not to afford any weight to Dr. Leahy's opinion. Accordingly, the case must be remanded for reconsideration of Dr. Leahy's opinion.

B. Credibility Determination

Next, plaintiff contends that the administrative law judge improperly discredited her testimony about her symptoms and abilities that, if credited, would have led to a finding of disability. Specifically, plaintiff says the administrative law judge should have credited her testimony that she could not work more than a few hours a week without becoming overwhelmed, called in sick several times a week, had difficulty getting out of bed, suffered frequent panic attacks and severe anxiety and had a condition that fluctuated. The administrative law judge discounted plaintiff's testimony for several reasons, including (1) "problems with treatment compliance"; (2) evidence suggesting she had a poor work history for reasons other than her disability; and (3) her ability to engage in numerous daily activities.

16

I agree with plaintiff that the administrative law judge's credibility determination is inadequate. First, in discussing plaintiff's "problems with treatment compliance," the administrative law judge stated that plaintiff's lack of compliance "suggests her symptoms may not have been as serious as has been alleged." AR 782. However, the administrative law judge failed to discuss the possible reasons for any "noncompliance," including that plaintiff could not always afford her medication and that the nature of her bipolar disorder itself may have made compliance difficult. Akin v. Berryhill, 887 F.3d 314, 318 (7th Cir. 2018) (administrative law judge must consider reasons for claimant's lack of certain treatment before drawing negative inferences about claimant's symptoms).

With respect to plaintiff's work history, the administrative law judge cited evidence suggesting that plaintiff chose to work part-time or left jobs for family or other reasons unrelated to her disability. AR 783. However, the administrative law judge failed to discuss contrary evidence in the record, including plaintiff's own testimony about her ability to work and multiple treatment notes in which plaintiff discussed with her therapist and psychiatrist the stress of working. E.g., AR 466-67, 1522. Although the administrative law judge need not discuss every piece of evidence, he failed to discuss evidence that directly undermined his own conclusions, thereby failing to "build a logical bridge from evidence to conclusion." Villano v. Astrue, 556 F.3d 558, 56 (7th Cir. 2009).

Finally, the administrative law judge erred by failing to explain why plaintiff's ability to perform simple household chores, work part-time on a sporadic basis and engage in some social activities with friends and family, suggests that she could be gainfully employed on a

17

full time basis. The administrative law judge cites nothing in the record suggesting that plaintiff has, at any time in the past decade, been able to work on a particular task or remain engaged in a specific activity for a sustained period of time on a daily basis. As the court of appeals has stated, "it's easier—especially for someone with an antisocial psychiatric disorder—to work in one's own home, at one's own pace, at one's own choice of tasks, than to work by the clock under supervision in a place of business." Price, 794 F.3d at 840. The administrative law judge's failure to acknowledge and discuss this distinction is error. Therefore, the case must be remanded so that the administrative law judge can conduct a more thorough credibility determination and give valid reasons for his findings that are supported with substantial evidence in the record.

C. Hypothetical Question to Vocational Expert

Plaintiff's final argument is that the administrative law judge's hypothetical question to the vocational expert did not account adequately for his finding that plaintiff had "no more than moderate difficulties" with regard to concentration, persistence or pace. However, plaintiff's arguments are not tailored to the facts of this case or the administrative law judge's discussion. Plaintiff's brief discusses the wrong claimant and the wrong residual functional capacity analysis and consists primarily of distracting boilerplate that has been cut and pasted from different cases. Dkt. #35 at 46-57.

On the other hand, the administrative law judge's discussion of plaintiff's limitations in concentration, persistence and pace has its own problems. Although he states that

plaintiff has "no more than moderate difficulties," the administrative law judge never explains what those difficulties would be or how they might limit plaintiff's ability to work. Instead, the administrative law judge states that plaintiff has a "fairly good ability to concentrate and attend." AR 775. Thus, it is not clear whether the limitations in plaintiff's residual functional capacity assessment and questions to the vocational expert reflect plaintiff's potential difficulties in concentration, persistence and pace, or whether they relate to some other limitations.

The Court of Appeals for the Seventh Circuit has made clear that an administrative law judge must orient the vocational expert to all of a claimant's limitations, including those in concentration, persistence or pace. O'Connor-Spinner v. Astrue, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). Although the administrative law judge does not need to use the magic words "concentration, persistence or pace," the record must show that the vocational expert was somehow aware of the claimant's particular limitations. Yurt v. Colvin, 758 F.3d 850, 857-58 (7th Cir. 2014). The court of appeals has held that an administrative law judge must explicitly address the limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted

19

for the limitations using different terminology. Lanigan v. Berryhill, 865 F.3d 558, 565 (7th Cir. 2017).

In this instance, the administrative law judge's conclusions about plaintiff's difficulties in maintaining concentration, persistence or pace are unclear. Thus, regardless whether this would be an independent reason to remand this case, the next administrative law judge who handles the case should explain more clearly plaintiff's limitations in concentration, persistence and pace and clearly incorporate those limitations in any hypothetical questions to the vocational expert.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Amy Marchel is REVERSED and this case is REMANDED to defendant Acting Commissioner of Social Security Nancy A. Berryhill for further proceedings consistent with this opinion.

Entered this 16th day of July, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge